

FILED
CLERK, U.S. DISTRICT COURT

DEC 23 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

SIEMENS, AG,

                    Plaintiff,

        v.

SEAGATE TECHNOLOGY,

                    Defendant.

CASE NO: SACV 06-788 JVS(ANx)

JURY   INSTRUCTIONS

DATED: December 17, 2008        JAMES V. SELNA
                                UNITED STATES DISTRICT JUDGE

December 16, 2008                              1

## Court's Instruction No. 1

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Lastly, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

December 16, 2008

Court's Instruction No. 2

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. These final instructions, together with the instructions I read to you before opening statements, are the complete set of jury instructions. You each have a copy of these instructions.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or anything the court may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

## Court's Instruction No. 3

This is a civil case.  Some issues must be proven by a standard called a "preponderance of the evidence," and others must be proven by a standard called "clear and convincing evidence."  A claim or affirmative defense is proven by "preponderance of the evidence" if the evidence, considered in light of all the other evidence, leads you to believe the claim or affirmative defense is more likely true than not true.

A fact is proven by "clear and convincing evidence" if the evidence establishes that it is highly probable the fact is true.  You should recognize the "clear and convincing evidence" standard is greater than the "preponderance of the evidence" standard.

You may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt."  That burden of proof is the highest standard.  It does not apply to a patent case such as this one, and you should therefore put it out of your mind.

In determining if a party has carried its burden of proof, you should base your decision on all the evidence, regardless of which party presented it.

I will instruct you on which standard to apply in which instance.  Absent any specific instruction as to which standard to apply, you are to apply the "preponderance of the evidence" standard.

December 16, 2008                                      4

## Court's Instruction No. 4

The evidence from which you are to decide what the facts are consists of:

(1)    the sworn testimony of any witness;

(2)    the exhibits which have been received into evidence;

(3)    any facts to which the parties have agreed or stipulated; and

(4)    interrogatory answers and responses to requests for admission.

December 16, 2008                                      5

## Court's Instruction No. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by Siemens' and Seagate's trial lawyers in this case are not evidence. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

December 16, 2008                                    6

Court's Instruction No. 6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

<u>Court's Instruction No. 7</u>

In deciding the facts in this case, you may decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness' memory;

(3)    the witness' manner while testifying;

(4)    the witness' interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness' testimony;

(6)    the reasonableness of the witness' testimony in light of all the evidence; and

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

December 16, 2008                                    8

## Court's Instruction No. 8

You have heard testimony from persons who, because of education or experience, are permitted to state opinions regarding technical matters and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case. If a witness offering an opinion bases the opinion on an assumption, then you must consider whether that assumption has been proved by the evidence in the case in assessing the credibility of the opinion.

December 16, 2008                                          9

## Court's Instruction No. 9

Certain deposition testimony has been shown or read to you. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories and requests for admissions submitted by the other side. These responses have been given in writing and under oath, before the actual trial, in response to questions or requests which were submitted in writing under established court procedures. The responses are entitled to the same consideration and are to be judged as to credibility and weight, and otherwise considered by you insofar as possible, as if the answers were made from the witness stand.

December 16, 2008

## Court's Instruction No. 10

Certain charts and summaries that have not been received into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard those charts and summaries and determine the facts from the underlying evidence.

Certain other charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

December 16, 2008                                          11

Court's Instruction No. 11

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

December 16, 2008

12

## Court's Instruction No. 12

This is a patent case. The Plaintiff is Siemens AG, and the Defendant is Seagate Technology. The patent in this lawsuit is United States Patent No. 5,686,838, which issued to Siemens on November 11, 1997. We will refer to this Patent as the '838 Patent. The '838 Patent relates to a type of sensor. The named inventor of the '838 Patent is Hugo van den Berg.

In proceedings before trial, I determined that certain hard disk drive products made and distributed by Seagate infringe the '838 Patent. I did not determine, however, whether the '838 Patent is valid, or whether it is enforceable, or whether any infringement by Seagate was willful, or what damages, if any, Siemens is entitled to. All of these questions are questions for you to decide, and my determination must not have any impact on how you decide the questions you are asked to decide.

Siemens contends that Seagate's infringement was willful and that it is entitled to damages. Seagate denies that it has infringed or willfully infringed any valid or enforceable claim of the '838 Patent or that Siemens is entitled to damages.

Seagate contends that the '838 Patent is invalid because, first, a sensor invented by IBM in the United States before the priority date of the '838 Patent anticipated the sensor claimed by the '838 Patent and, second, IBM's sensor or other prior art made the sensor claimed by the '838 Patent obvious to a person of ordinary skill in the art. Seagate also contends that the '838 Patent is unenforceable because the inventor or others involved in prosecuting the '838 Patent withheld material information from the United States Patent and Trademark

December 16, 2008                                    13

1 Office and intended to deceive it. Siemens denies that the '838 Patent is invalid or

2 unenforceable for any of these reasons.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 December 16, 2008                          14

1

2

3

4

5

6

## Court's Instruction No. 13

   At the beginning of trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  December 16, 2008

## Court's Instruction No. 14

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns.  Claims may describe products, including machines, or systems, or processes.

Claims are usually divided into parts or steps, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue are each a separate limitation of the claim.

## Court's Instruction No. 15

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not any of the asserted claims of the '838 Patent are invalid.

It may be helpful to refer to the copy of the '838 Patent that you have been given as I discuss the claims at issue here.  The claims are at the end of the '838 Patent, starting at Column 10, Line 59, and continuing to the end of the patent at Column 12, Line 63.

December 16, 2008

## Court's Instruction No. 16

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 1 of the '838 Patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the other claim or claims to which it refers, as well as the additional elements recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

Claims 7, 14, 15, 19, and 20 of the '838 Patent are dependent claims because they refer to Claim 1 of the '838 Patent. To determine what a dependent claim covers, the words of that claim and all of the claims from which it depends must be read together.

Claims 1, 7, 14, 15, 19, and 20 of the '838 Patent are the only claims at issue ("asserted") in this trial. You should disregard all other claims in the Patent.

December 16, 2008

18

## Court's Instruction No. 17

The beginning portion, or preamble, of Claims 1, 7, 14, 15, 19, and 20 of the '838 Patent uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements recited in the claim, but also covers products that add additional elements.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains additional structures, such as a leaf or wheels on the legs.

Claims 1, 7, 14, 15, 19, and 20 of the '838 Patent use the "comprising" language.

<u>Court's Instruction No. 18</u>

I have now instructed you as to the types of claims at issue in this case. I have defined the meaning of some of the words used in the patent claims at issue. You must use these definitions, which are set forth below, in your consideration of invalidity issues. For all other words in the claims of the '838 Patent, you must give them their ordinary and customary meaning.

| Claim(s) | Term | Meaning |
|---|---|---|
| 1 a1 | Magnetization | Average magnetic moment per unit volume, having both a magnitude and direction |
| 1 a1 | Corresponds to a predefined ground state magnetization | Corresponds to a predetermined magnetization state in the absence of an applied magnetic field |
| 1 a2 | At least approximately constant in the measuring range of the magnetic field | At least approximately constant over the range of the magnetic field to be measured |
| 1 a3 | Interlayer | Non-magnetic metal layer |
| 1 a4 | A magnetic layer which is coupled antiferromagnetically to the bias layer through a coupling layer | A magnetic layer which is coupled to the bias layer across a coupling layer such that the magnetization of the magnetic layer and the magnetization of the bias layer are aligned in opposite directions |
| 15 | Said measuring contacts are arranged on an outer | Said measuring contacts, which are not a functional part of the layer system, are in |

December 16, 2008                                    20

| | layer | contact with an outer layer |
|---|---|---|
| 19, 20 | Is magnetized | Has a magnetization |
| 19, 20 | Preferred axis | An imaginary line that indicates a favored alignment |

December 16, 2008

## Court's Instruction No. 19

The right of the patent holder to exclude others from use of his invention is conferred by statutes. That right does not depend on whether the patent holder makes or has ever made a commercial product using the patent. That right does not depend on whether the patent holder is or is not a competitor of the alleged infringer. However, as I will later instruct you, these two considerations may be relevant to damages.

December 16, 2008

## Court's Instruction No. 20

As I instructed you at the beginning of this case, in proceedings before trial, I determined that certain hard disk drive products made and distributed by Seagate infringe the '838 Patent. I did not determine, however, whether the '838 Patent is invalid, or whether it is unenforceable, or whether any infringement by Seagate was willful, or what damages, if any, Siemens is entitled to. All of these questions are for you to decide, and my determination that Seagate's products infringe the '838 Patent should have absolutely no impact on how you decide the questions you are asked to decide. Nor does my determination on any question presented to me mean that I have any opinion on any of the questions that are for you to decide.

Remember, you are to decide each of the questions presented to you solely on the basis of the facts as you find them to be and your own application of those facts to the law which gave you in the preliminary instructions, during trial, and in the final instructions I am now giving you. You should not infer from my rulings that I have any opinion on the questions that are yours to decide. Your decision on each of the questions presented to you must be yours, and yours alone, reached without bias or prejudice, and without any influence from any decision I may have made on questions presented to me to decide.

December 16, 2008                                    23

## Court's Instruction No. 21

I will now instruct you on the rules you must follow in deciding whether Seagate has proven that any of the asserted claims of the '838 patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Seagate must do so by clear and convincing evidence.

In making your determination as to invalidity, you must consider each asserted claim separately.

Seagate asserts that the '838 patent is invalid because it was anticipated and because it was obvious. A patent claim is invalid if Seagate proves either one of these theories.

December 16, 2008                                      24

## Court's Instruction No. 22

A party can be held liable only if a patent is not invalid. For a patent to be valid, the invention claimed in the patent must be, among other things, new and non-obvious. The terms "new" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Seagate's grounds for asserting invalidity.

Seagate is challenging the validity of the '838 Patent on a number of grounds. You must determine validity on a claim-by-claim basis. Therefore, even if you were to find one asserted claim to be invalid, you must separately analyze whether other asserted claims are invalid.

When a patent is granted and issued by the PTO, the patent and its claims are presumed valid. It is presumed that the patent's subject matter is new and constitutes an advance that was not obvious to a person of ordinary skill in the art to which the subject matter pertains when the invention was made. Because of this presumption, a party asserting invalidity must prove invalidity by clear and convincing evidence. Once a patent's validity has been put in issue, it is the jury's responsibility to review the PTO's actions consistent with these instructions on the law. The presumption itself is not evidence but rather determines the standard of proof.

The presumption of validity puts the burden of proving invalidity on Seagate. This burden requires Seagate to prove by clear and convincing evidence that each of Siemens' asserted patent claims is invalid.

On certain issues in this case, a witness's testimony must be corroborated in

December 16, 2008                                      25

1  order to meet the standard of clear and convincing evidence.  Testimony of a single

2  witness standing alone, without corroboration, is insufficient to invalidate a patent

3  claim, regardless of the witness' level of interest in the lawsuit.  Corroboration

4  means evidence in addition to the witness' statement.  "Corroboration" may come

5  in many forms, including documents and the testimony of other witnesses.  You

6  must evaluate all pertinent evidence to make a sound determination of the

7  credibility of the inventor's story.  To determine whether a witness' evidence has

8  been corroborated, you should consider all the evidence in the record as a whole.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  December 16, 2008                              26

# Court's Instruction No. 23

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and nonobvious in light of what came before. That which came before is referred to as the "prior art." In this case, the parties have stipulated that December 21, 1992 is the priority date of the '838 Patent. Seagate is relying on various items of prior art. Seagate and Siemens agree that some items are prior patents and printed publications:

| | |
|---|---|
| Ex. 107 | "Oscillatory Magnetic Exchange Coupling through Thin Copper Layers ("Parkin I") |
| Ex. 108 | "Spin engineering: Direct determination of the Ruderman-Kittel-Kasuya-Yosida far-field range function in ruthenium" ("Parkin II") |
| Ex. 176 | "Theory of Giant Magnetoresistance Effects in Magnetic Layered Structures with Antiferromagnetic Coupling" (Camely) |
| Ex. 326 | '039 Gruenberg Patent |
| Ex. 329 | '513 Dieny-Parkin Patent |
| Ex. 657 | '527 Akiyama Patent |
| Ex. 658 | '978 Saito Patent |
| Ex. 1016 | "Giant Magnetoresistance of (001)Fe/(001)Cr Magnetic Superlattices" (Baibich) |
| Ex. 1020 | "Nonoscillatory magnetoresistance in Co/Cu/Co layered structures with oscillatory coupling" (Speriosu) |
| Ex. 1021 | "Oscillatory interlayer coupling and giant magnetoresistance in Co/Cu multilayers" (Mosca) |
| Ex. 1028 | "Spin-valve effect in soft ferromagnetic sandwiches" (Dieny) |
| Ex. 1563 | Abstract: "Coupled Film Device with Minimum Stray Fields" (IBM Technical Bulletin) |

There is a dispute as to whether all of these patents and publications are relevant

December 16, 2008

1  prior art.

2

3      Seagate is also relying on items that Siemens does not agree are prior art.
4  Seagate must prove by the clear and convincing evidence standard that these items
5  are prior art.  In order to do so, Seagate must prove that the items fall within one or
6  more of the different categories of prior art recognized by the patent laws.  These
7  categories include:

8

9      First, anything that was patented or described in a printed publication
10 anywhere in the world before December 21, 1992.

11

12      Second, anything that was invented by another person in this country before
13 December 21, 1992, if the other person did not abandon, suppress or conceal his or
14 her prior invention.

15

16      Third, anything that was described in a patent issued from a patent
17 application filed in the United States or certain foreign countries before December
18 21, 1992.

19      I will now describe the specific requirements for the prior art categories
20 relied on by Seagate in this case.

21

22

23

24

25

26

27

28 December 16, 2008                                                28

## Court's Instruction No. 24

Printed publications from anywhere in the world are prior art if the printed publications were published before December 21, 1992.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.  A document which is not available to the public because a company maintains the document as confidential and is not authorized for public release is not a prior publication.

The date that a printed publication becomes prior art is the date that it becomes available to the public.  Published patent applications are printed publications as of their publication dates.

December 16, 2008

29

Court's Instruction No. 25

An invention made by another person in this country before December 21, 1992 is prior art to the '838 Patent, unless the invention was abandoned, suppressed, or concealed.

A prior invention contains all the elements that were included in the physical embodiment of the invention that was made and shown to work for its intended purpose. Later in these instructions, I will instruct you on the defenses of anticipation and obviousness. A prior invention that contains every element of a claim of the '838 Patent anticipates the claim. A prior invention that contains less than every element of a claim of the '838 Patent may be considered in determining whether the claim is obvious.

In this case, Seagate contends that inventor(s) at IBM made an invention that is prior art to the '838 Patent.

There are two parts to the making of an invention. Seagate must prove each part by clear and convincing evidence. First, the inventor(s) has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed a specific, settled idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. Proof of conception and the date of conception requires corroboration, as I have previously defined the term. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" either when a patent

December 16, 2008                                    30

application is filed (constructive reduction to practice) or when it is made and shown to work for its intended purpose (actual reduction to practice). If a prior invention is offered as evidence of anticipation, An inventor must appreciate that the physical embodiment worked and that it included each and every claim limitation of the invention that became the '838 Patent. Proof of reduction to practice and the date of reduction to practice also requires corroboration. If you find that the inventor(s) conceived and reduced to practice an invention before December 21, 1992, then its invention will be prior art to the claims of the '838 Patent, unless the inventor(s) at IBM abandoned, suppressed or concealed the invention.

The final requirement for a prior invention to be prior art is that the prior inventor(s) did not abandon, suppress or conceal his or her invention after having reduced it to practice. Once Seagate has shown by clear and convincing evidence that inventor(s) at IBM made a prior invention, Siemens bears the burden of producing evidence sufficient to create an issue of material fact as to whether the inventor(s) at IBM abandoned, suppressed or concealed the invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was reasonably promptly (*i.e.*, without too long a delay) made public in a patent application. If Siemens meets that burden, then Seagate must prove by clear and convincing evidence that the inventor(s) at IBM did not abandon, suppress, or conceal its inventions.

An invention cannot be abandoned, suppressed, or concealed until it has been reduced to practice because, until then, there is no invention. The prior inventor(s) may be found to have abandoned, suppressed, or concealed an invention after the invention was reduced to practice if (1) he or she deliberately

December 16, 2008                                 31

1  abandoned, suppressed, or concealed the invention or (2) there was an

2  unreasonable delay in filing a patent application.

3

4        An invention is deliberately abandoned, suppressed, or concealed if the prior

5  inventor intentionally delays filing a patent application in order to prolong the

6  period during which the invention is maintained confidential.  The mere fact that

7  an invention is kept confidential does not, by itself, show deliberate abandonment,

8  suppression or concealment.

9

10       In determining whether there was an unreasonable delay in filing a patent

11 application, you must consider the specific facts and circumstances of this case.

12 The reasonably prompt filing of a patent application that discloses the invention is

13 evidence that the invention was not abandoned, suppressed or concealed.  What

14 constitutes a reasonable time for drafting a patent application depends on the

15 technology and the particular facts.  Mere delay, without more, is not sufficient to

16 establish abandonment, suppression, or concealment.  You must consider the prior

17 inventor's total conduct to determine whether any delay beyond a reasonable time

18 gives rise to an inference of abandonment, suppression, or concealment.  Activity

19 by the prior inventor directed toward evaluating and preparing a patent application

20 is a factor to consider.

21

22       If the prior inventor had (1) reduced his or her invention to practice, (2)

23 abandoned, suppressed, or concealed it for a period of time, and then (3) "renewed

24 activity" and proceeded without unreasonable delay to filing a patent application

25 on his or her invention before the second inventor entered the field of invention (in

26 this case, December 21, 1992), then the prior inventor is entitled to rely on the date

27

28 December 16, 2008                                    32

1  of his or her renewed activity, and you should consider the time period after the

2  prior inventor renewed his or her activity in determining whether he or she has

3  abandoned, suppressed, or concealed the invention.  Proof  that there was no

4  unreasonable delay must be corroborated.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  December 16, 2008

Court's Instruction No. 26

An issued patent may be prior art to the '838 Patent under two circumstances.

First, a patent issued anywhere in the world is prior art to the '838 Patent if the patent issued before December 21, 1992.

Second, a U.S. patent or published U.S. patent application is prior art to the '838 Patent if the patent application for the U.S. patent was filed by another person before December 21, 1992.

December 16, 2008                                34

Court's Instruction No. 27

A person cannot obtain a patent if someone else already has made an identical invention that constitutes prior art. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. Seagate contends that an invention by inventor(s) at IBM anticipates the invention claimed by the '838 Patent; Siemens denies this contention. An invention that is "anticipated" by the prior art is not entitled to patent protection. Seagate, as the party challenging validity of the '838 Patent, must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single prior invention that was not abandoned, suppressed, or concealed. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

If you find that Seagate has proved by clear and convincing evidence that any of the claims of the '838 Patent are anticipated, then you must find that those claims are invalid.

December 16, 2008                                    35

Court's Instruction No. 28

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the art at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a person of ordinary skill to combine the items of prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Where Seagate asserts that a claim is obvious, Seagate has the burden of proving by clear and convincing evidence that the claims of the '838 Patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the art. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent and not already known to a person of ordinary skill in the art. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill as of December 21, 1992.

December 16, 2008                              36

1    In determining whether or not the claims of the '838 Patent would
2 have been obvious, you should make the following determinations:

3
4    First, what is the scope and content of the prior art?

5
6    Second, what differences, if any, are there between the invention of
7 the claims of the patent and the prior art?

8
9    Third, what was the level of ordinary skill in the art at the time the
10 invention was made?

11
12    Finally, you may consider in your analysis any evidence that was
13 presented to you in this case regarding the presence or absence of the following
14 factors in deciding whether or not the invention would have been obvious at the
15 time it was made:

16
17    (1)    commercial success of a product due to the merits of the
18 claimed invention;

19
20    (2)    a long felt need for the solution provided by the claimed
21 invention;

22
23    (3)    unsuccessful attempts by others to find the solution provided by
24 the claimed invention;

25
26    (4)    copying by Seagate of the specific product Siemens invented;

27
28 December 16, 2008                           37

(5)   unexpected and superior results from the claimed invention;

(6)   acceptance by others of the claimed invention as shown by praise by others in the field or from the licensing of the claimed invention; and

(7)   other evidence tending to show obviousness or nonobviousness.

Against this background, you must decide whether or not the invention covered by the '838 Patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

December 16, 2008

## Court's Instruction No. 29

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Seagate.  You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

December 16, 2008

Court's Instruction No. 30

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should ask yourself: Would the prior art combination be obvious to a person with ordinary skill in the art? There is no fixed test for answering this question.

You may consider the following factors: The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. When a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious.

In determining whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue, you may consider the interrelated teachings of multiple patents and the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art. When there is a design need or market pressure to solve a problem and there are a limited number of identified predictable solutions that would be known to a person of ordinary skill, it is likely

December 16, 2008                                    40

that a resulting invention is not the product of innovation but of ordinary skill and common sense; in other words, that it is likely obvious. Said somewhat differently, if a solution is obvious to try, it may support a conclusion that the result is obvious.

When the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious. The fact that elements work together in an unexpected and fruitful manner supports the conclusion that a design was not obvious to those skilled in the art.

A patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.

It is improper to use hindsight to find obvious a combination of such building blocks.

December 16, 2008                              41

## Court's Instruction No. 31

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this person of ordinary skill is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

December 16, 2008

## Court's Instruction No. 32

Seagate contends that all of the asserted claims of the '838 Patent would have been obvious to a person of ordinary skill in the art at the time the invention was made. If you find that Seagate has proved obviousness of any claims by clear and convincing evidence, then you must find the claims are invalid for obviousness.

December 16, 2008

43

Court's Instruction No. 33

Every applicant for a patent has a duty of candor and good faith in its dealings with the United States Patent and Trademark Office and with the Examiner handling the application. This duty of candor is important because the examiner has limited resources. The examiner may have less information available to him than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent. The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent. To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness. This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

December 16, 2008                                    44

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, an alleged infringer must establish that inequitable conduct occurred during the examination of a patent by clear and convincing evidence. To establish that the '838 Patent was obtained through inequitable conduct, Seagate must present clear and convincing evidence satisfying both of the following requirements: (1) a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application; and (2) this individual or individuals acted with an intent to deceive or mislead the PTO.

In this case, Seagate contends that the inventor of the '838 Patent, Dr. Hugo van den Berg, through his own conduct and the conduct of other persons substantively involved in the prosecution of the '838 Patent, failed to disclose two "material" prior art references to the Patent and Trademark Office, made misleading statements to the Patent and Trademark Office during the examination of the '838 Patent, and did so with an intent to deceive the examiner into issuing the '838 Patent. Siemens denies these allegations, and denies that there was inequitable conduct.

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as Seagate contends.

Court's Instruction No. 34

If you find that the applicant, the applicant's representatives, or others involved in a substantial way with the examination of the application withheld information or made false or misleading statements to the Patent Trademark Office during the examination of the '838 Patent, you must then determine whether or not any of the withheld information or false or misleading statements were material.

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented by the '838 Patent more likely than not failed to satisfy one or more of the requirements for a patent. Information or statements also are material if they refute or are inconsistent with a position that the applicant for the '838 patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable. Information or statements are material if there is a substantial likelihood that a reasonable examiner would have considered them important in deciding whether to allow the '838 Patent to issue.

Cumulative information is not material. Information is cumulative if it adds little to or has no more bearing on the examination of an application than information the examiner already had. Information is cumulative if it teaches no more than what a reasonable examiner would consider to be taught by the information already before the PTO. However, information combining one or more features is not cumulative, even if the same information was separately available in other references. Information that discloses a more complete

December 16, 2008                                    46

1  combination of the relevant features of the invention sought to be patented may be
2  highly material.  This is true even if those features were before the examiner in
3  other, less complete references.

4
5          I will now discuss the concept of "intent to mislead."
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  December 16, 2008                                    47

## Court's Instruction No. 35

In order for inequitable conduct to have occurred Seagate must establish that any failure to disclose material information or the act of making false or misleading statements was done with an intent to deceive the examiner who reviewed the '838 Patent at the Patent and Trademark Office.   In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and the evidence of the presence or absence of good faith on Dr. Hugo van Berg's part or the part of others substantively involved in the prosecution of the '838 Patent.

If failure to disclose material information or the act of making false or misleading statements occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct. The fact that there has been  improper performance of, or omission of, an act one ought to have performed, by itself, does not amount to inequitable conduct. Thus, the fact that information later found material was not disclosed cannot, by itself, satisfy the separate intent requirement for inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. You are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been.

December 16, 2008                                      48

## Court's Instruction No. 36

If Seagate has proven by clear and convincing evidence that material information was withheld or misrepresented or falsely submitted by a person with the duty of good faith and candor with an intent to mislead or deceive the PTO, you must then balance the degree of materiality and the degree of intent to deceive or mislead the PTO to determine whether or not the evidence is sufficient to establish by clear and convincing evidence that there was inequitable conduct committed in the prosecution of the '838 Patent. Where the materiality of the withheld or misrepresented or false information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct.

Even if Seagate proves a threshold level of both materiality and intent by clear and convincing evidence, you still must balance the equities to determine whether Dr. van den Berg's conduct before the PTO was egregious enough to warrant holding the entire '838 Patent unenforceable.

December 16, 2008

49

## Court's Instruction No. 37

I have now instructed you as to the law governing Seagate's claims of invalidity and unenforceability.   I have previously advised you that I found that certain Seagate products infringed the '838 Patent.  In the absence of invalidity or inequitable conduct, Siemens is entitled to damages for infringement.

The fact that I am instructing you about damages does not mean that Siemens is or is not entitled to recover damages.  I am expressing no opinion one way or the other.

December 16, 2008

50

## Court's Instruction No. 38

Here, the measure of damages is a reasonable royalty, but not less than a reasonable royalty for the use made of the invention by the infringer about which I will instruct you in a moment. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer or to set an example.

Siemens has the burden to persuade you of the amount of its damages by a preponderance of the evidence. You should award only those damages that Siemens more likely than not suffered. While Siemens is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Siemens is not entitled to damages that are remote or speculative.

Court's Instruction No. 39

If you determine that Siemens has sustained damages under the Court's instructions, you may only award damages sustained on or after November 24, 2004.

December 16, 2008

Court's Instruction No. 40

In this case, the proper measure of damages is a reasonable royalty for infringing conduct by Seagate on or after November 24, 2004.  Infringing conduct means (1) any offers to sell or sales of infringing products within the United States by Seagate; (2) any imports of infringing products into the United States by Seagate; (3) any manufacture of infringing products within the United States by Seagate; or (4) any use of infringing products within the United States by Seagate .

A royalty is a payment made to a patent holder in exchange for rights to make, use, sell or import the claimed invention.  A reasonable royalty may take many forms, including a running percentage royalty and a lump sum royalty.  A reasonable royalty is the payment that would have resulted from a hypothetical negotiation between a patent holder and the infringer . The parties have stipulated that the hypothetical negotiation would have occurred on  September 8, 1999.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that the patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the date of the hypothetical negotiation.  That evidence can be considered in

December 16, 2008                      53

1    determining a reasonable royalty rate only to the extent that it aids you in assessing
2    what royalty would have resulted from the hypothetical negotiation.
3
4            Although evidence of the actual profits Seagate made may aid you in
5    determining the anticipated profits at the time of the hypothetical negotiation, you
6    may not limit or increase the royalty based on the actual profits Seagate made.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28    December 16, 2008

## Court's Instruction No. 41

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the hypothetical negotiation in this case would have taken place, on or about September 8, 1999. Some of the kinds of factors that you may consider in making your determination are listed below.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of those factors. The final factor establishes the framework which you should use in determining a reasonable royalty, i.e., the payment that would have resulted from a hypothetical negotiation between a patent holder and the infringer taking place at the time when the infringement first began. Some of the kinds of factors are:

(1)    whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2)    the nature of the commercial relationship between the patent holder and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)    the established profitability of the patented product, its

December 16, 2008                              55

1  commercial success, and its popularity at the time;

2

3          (4)     whether the patent holder had an established policy of granting

4  licenses or retaining the patented invention as its exclusive right, or whether the

5  patent holder had a policy of granting licenses under special conditions designed to

6  preserve his monopoly;

7

8          (5)     the size of the anticipated market for the invention at the time

9  the infringement began;

10

11         (6)     the duration of the patent and of the license, as well as the terms

12 and scope of the license, such as whether it is exclusive or nonexclusive or subject

13 to territorial restrictions;

14

15         (7)     the rates paid by the licensee for the use of other patents

16 comparable to the plaintiff's patent;

17

18         (8)     whether the licensee's sales of the patented invention promote

19 sales of its other products and whether the invention generates sales to the inventor

20 of his nonpatented items;

21

22         (9)     the utility and advantages of the patented property over the old

23 modes or devices, if any, that had been used for working out similar results;

24

25         (10)    the extent to which the infringer used the invention and any

26 evidence probative of the value of such use;

27

28 December 16, 2008                          56

(11)   the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12)   the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)   the opinion and testimony of qualified experts and of the patent holder; and

(14)   any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

December 16, 2008

Court's Instruction No. 42

During the testimony of Nils Pirschel I gave you a limiting instruction. In part, Mr. Pirschel testified to the implications of the Fujitsu licence for licensing other firms, and he provided a calculation for Seagate and other firms. You may consider this evidence with regard to Seagate and other firms only for the purpose of understanding the reasons Mr. Pirschel agreed to the royalty rate in the Fujitsu agreement. This testimony with regard to Seagate and other firms is not evidence of a reasonable royalty, and may not be considered for that purpose.

Consistent with this limitation, you may consider the Fujitsu license itself, along with all the other evidence bearing on the issue of a reasonable royalty, in determining what a reasonable royalty would be in this case.

December 16, 2008

## Court's Instruction No. 43

Siemens contends that it is entitled to a reasonable royalty based on the entire sales price of Seagate's hard disk drives, rather than the sales price of the component in Seagate's hard disk drives of which Siemens' patented sensor is a part or some other basis. Seagate disputes that Siemens is entitled to a royalty based on the entire sales price of its hard disk drives.

In order for Siemens to recover damages based on the entire sales price of Seagate's hard disk drives, Siemens must show that the patented sensor functions together with the other components of the hard disk drive to produce a desired end product or result, and that the patented sensor forms the basis for customer demand for the entire hard disk drive.

December 16, 2008                                          59

Court's Instruction No. 44

In this case, Siemens contends that Seagate infringed willfully. If you have decided that one or more of the asserted claims of the '838 Patent is not invalid, you must go on and address the additional issue of whether or not this infringement was willful.

To prove willful infringement, Siemens must prove all three of the following elements by clear and convincing evidence: First, that Seagate infringed the '838 Patent. Second, that there was an objectively high likelihood that Seagate's actions would infringe a valid, enforceable patent. Third, that this objectively high risk was either known or so obvious that it should have been known to Seagate. I have already determined that first element has been met.

In determining the second element—whether there was an objectively high likelihood of infringing a valid, enforceable patent—you must consider the strength of Seagate's defenses of invalidity and unenforceability based on all the evidence that was presented to you in this case. Whether or not you ultimately decide to invalidate any of the claims of the '838 Patent or find the '838 Patent to be unenforceable, you should consider whether these defenses were objectively reasonable, credible, or substantial. If you determine that any of Seagate's defenses relating to invalidity or unenforceability were objectively reasonable, credible, or substantial, then you must find that no objectively high likelihood of infringing a valid, enforceable patent existed. Seagate's actual knowledge or state of mind is not relevant to this objective inquiry.

December 16, 2008                    60

In determining the third element—whether Seagate acted despite the fact that the objectively high risk was either known or so obvious that it should have been known to Seagate—you must consider what Seagate knew or should have known at the time it infringed the '838 Patent. As indicated, this element turns on Seagate's actual state of mind. In connection with this element, you must consider all of the evidence, including the following:

(1)    whether Seagate acted in a manner consistent with the standards of commerce for its industry;

(2)    whether Seagate intentionally copied the technology from Siemens covered by the '838 Patent;

(3)    whether Seagate reasonably believed that it had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated. Because this element turns on Seagate's actual knowledge, Seagate cannot rely on a defense to infringement that was not known to Seagate at the time it engaged in the infringing conduct;

(4)    whether Seagate tried to cover up its infringement;

(5)    the duration of Seagate's misconduct;

(6)    absence of remedial action by Seagate;

(7)    Seagate's motivation for harm; and

December 16, 2008

61

1

2          (8)     whether or not Seagate made a good faith effort to avoid

3   infringing the patent, for example by taking remedial action upon learning of the

4   '838 Patent such as ceasing infringing activity or attempting to design around the

5   patent.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   December 16, 2008                                    62

## Court's Instruction No. 45

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

After you have reached your unanimous verdict, your foreperson is to fill in the Special Verdict Form to provide your answers to the questions asked. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one

December 16, 2008

63

1  or more members of the jury.  No member of the jury should ever attempt to
2  communicate with me except by a signed writing; and I will communicate with any
3  member of the jury on anything concerning the case only in writing, or here in open
4  court.  If you send out a question, I will consult with the parties before answering it,
5  which may take some time.  You may continue your deliberations while waiting for
6  the answer to any question.  Remember that you are not to tell anyone — including
7  me — how the jury stands, numerically or otherwise, until after you have reached a
8  unanimous verdict or have been discharged.  Do not disclose any vote count in any
9  note to the court.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  December 16, 2008                                              64

### Court's Instruction No. 46

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

December 16, 2008

65

## Court's Instruction No. 47

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.  You must follow the instructions on the verdict form.

The bailiff may not relay oral requests to the Court.

December 16, 2008