1  JOHN A. O'MALLEY (CA BAR NO. 101181)
   BRANDON C. FERNALD (CA BAR NO. 222429)
2  **FULBRIGHT & JAWORSKI L.L.P.**
   555 S. Flower Street, 41st Floor
3  Los Angeles, CA  90071
   Telephone:  (213) 892-9200
4  Facsimile:  (213) 892-9494
   Email:  jomalley@fulbright.com
5          bfernald@fulbright.com

6
   ROBERT M. CHIAVIELLO, JR. (*admitted pro hac vice*)
7  MIRIAM QUINN (*admitted pro hac vice*)
   **FULBRIGHT & JAWORSKI L.L.P.**
8  2200 Ross Avenue, Suite 2800
   Dallas, Texas  75201-2784
9  Telephone:  (214) 855-8000
   Facsimile:  (214) 855-8200
10 Email:  bobc@fulbright.com
           mquinn@fulbright.com
11
   Attorneys for Plaintiff
12 Siemens AG

13

14

15                    UNITED STATES DISTRICT COURT

16                    CENTRAL DISTRICT OF CALIFORNIA

17                        SOUTHERN DIVISION

18

19

20 SIEMENS AG,                    )  Civil Action No.  SA CV 06-788 JVS
                                  )  (ANx)
21              Plaintiff,        )
                                  )
22      v.                        )
                                  )
23 SEAGATE TECHNOLOGY            )  **SIEMENS AG'S RENEWED MOTION
                                  )  FOR JUDGMENT AS A MATTER OF
24              Defendant.        )  LAW OR, ALTERNATIVELY,
                                  )  MOTION FOR NEW TRIAL ON
25                                )  SEAGATE TECHNOLOGY'S
                                  )  OBVIOUSNESS DEFENSE**
26                                )

27

28

Document Prepared
on Recycled Paper

60166172.9

# TABLE OF AUTHORITIES

PAGE

INTRODUCTION ............................................................................................... 1

RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ................... 2

I.    NO REASONABLE JURY COULD HAVE FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE PARKIN I AND II ARTICLES RENDER THE ASSERTED CLAIMS INVALID AS OBVIOUS .......................................................................................... 2

    A.    No Reasonable Jury Could Have Found By Clear and Convincing Evidence That a Person of Ordinary Skill Would Have Been Motivated to Combine the Teachings of the Parkin I and II Articles With a Basic GMR Sensor ............................................ 2

        1.    No Reasonable Jury Could Have Found That the Parkin I and II Articles Are Clear and Convincing Evidence That the Asserted Claims Are Invalid as Obvious Because They Teach Away From a Combination with a Basic GMR Sensor ................................................................. 3

            a.    The '838 Patent Requires Stability in the Presence of a Magnetic Field ............................................ 3

            b.    The Structures Disclosed in the Parkin I and Parkin II Articles Are Not Stable in the Presence of a Magnetic Field ...................................................... 4

        2.    Seagate's Sole Evidence of an Alleged Motivation to Combine – Dr. Wang's Testimony – Is Not Competent or Substantial Evidence of Such Motivation ...................... 5

    B.    Even Assuming a Motivation to Combine the Parkin I and II Articles With a Basic GMR Sensor Existed, No Reasonable Jury Could Have Found By Clear and Convincing Evidence That Such Combination Results in the Claimed Invention .......................... 6

        1.    Dr. Wang's Opinion Is Based on a Gross Misreading of the Term "Pinning" in the Parkin I Article ................................ 6

        2.    Dr. Wang's Opinion Improperly Ignores Limitations of the Asserted Claims ............................................... 9

    C.    The Court's Findings on Inequitable Conduct Confirm That the Parkin I and II Articles Do Not Render the Asserted Claims Invalid as Obvious ................................................ 10

II.    NO REASONABLE JURY COULD HAVE FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE WORK OF HEIM AND PARKIN RENDERS THE ASSERTED CLAIMS INVALID AS OBVIOUS ........................................................................................ 12

    A.    The Work of Heim and Park Is Not Proper Prior Art .......................... 12

    B.    Regardless of Whether the Work of Heim and Parkin Was Abandoned, Suppressed, or Concealed, It Still Should Not Have Been Available as Prior Art Under Section 103 ................................. 13

CONDITIONAL MOTION FOR NEW TRIAL ................................................ 14

DOCUMENT PREPARED
ON RECYCLED PAPER

I.    A NEW TRIAL SHOULD BE GRANTED BECAUSE THE JURY'S
      OBVIOUSNESS VERDICT IS CONTRARY TO THE WEIGHT OF
      THE EVIDENCE ........................................................................................ 14

II.   A NEW TRIAL SHOULD BE GRANTED BECAUSE THE JURY'S
      OBVIOUSNESS VERDICT IS THE PRODUCT OF PREJUDICIAL
      ERROR ON THE EXCLUSION AND ADMISSION OF EVIDENCE ...... 15

      A.    The Exclusion of Dr. Parkin's Testimony on Obviousness Was
            Erroneous and Prejudicial .................................................................. 16

      B.    The Admission of Evidence Regarding the Work of Heim and
            Parkin Was Erroneous and Prejudicial ............................................... 18

CONCLUSION ...................................................................................................... 19

1

# <u>TABLE OF AUTHORITIES</u>

2

## FEDERAL CASES

3

**PAGES**

4 | Adv. Cardiovascular System, Inc. v. Medtronic, Inc.,
265 F.3d 1294 (Fed. Cir. 2001).................................................................. 15

5
6 | Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,
509 U.S. 209 (1993) .................................................................. 5, 6, 9

7 | CollegeNet, Inc. v. ApplyYourself, Inc.,
418 F.3d 1225 (Fed. Cir. 2005) .................................................................. 2

8
9 | Dorn v. Burlington N. Santa Fe R.R.,
397 F.3d 1183 (9th Cir. 2005).................................................................. 15

10 | E.I. Du Pont De Nemours v. Phillips Petroleum Co.,
849 F.2d 1430 (Fed. Cir. 1988) .................................................................. 12, 13

11
12 | In re Bass,
474 F.2d 1276 (CCPA 1973) .................................................................. 12

13 | In re Geerdes,
491 F.2d 1260 (CCPA 1974) .................................................................. 9

14
15 | Kimberly-Clark Corp. v. Johnson & Johnson,
745 F.2d 1437, 1460 (Fed. Cir. 1984).................................................................. 13, 14

16 | KSR International Co. v. Teleflex Inc.,
172 S. Ct. 1727 (2007) .................................................................. 2, 3, 12

17
18 | Landes Construction Co. v. Royal Bank of Canada,
833 F.2d 1365 (9th Cir. 1987).................................................................. 14

19 | Lucent Techs. Inc. v. Gateway, Inc.,
509 F. Supp. 2d 912 (S.D. Cal. 2007).................................................................. 5, 6, 9

20
21 | Lucent Techs., Inc. v. Gateway, Inc.,
543 F.3d 710 (Fed. Cir. 2008).................................................................. 2

22 | Maxwell v. Angel-Etts of Cal.,
2001 U.S. Dist. LEXIS 25418 (C.D. Cal. July 9, 2001), aff'd, 2002
23 | U.S. App. LEXIS 26528 (Fed. Cir. Dec. 13, 2002), amended, 2003
U.S. App. LEXIS 634 (Fed. Cir. Jan. 2, 2003) (citing Weisgram v.
24 | Marley Co., 528 U.S. 440 (2000)). I. N .................................................................. 2

25 | McEuin v. Crown Equip.,
328 F.3d 1028 (9th Cir. 2003).................................................................. 15

26
27 | Molski v. M.J. Cable, Inc.,
481 F.3d 724 (9th Cir. 2007).................................................................. 14

28 | Murphy v. City of Long Beach,

914 F.2d 183 (9th Cir. 1990)........................................................................19

Panduit Corp. v. Dennison Manufacturing Co.,
    810 F.2d 1561 (Fed. Cir. 1987)................................................................9

Reeves v. Sanderson Plumbing Products,
    530 U.S. 133 (2000) ..................................................................................2

Tec Air, Inc. v. Denso Manufacturing Mich. Inc.,
    192 F.3d 1353 (Fed. Cir. 1999)................................................................3

United States v. Ahmed,
    472 F.3d 427 (6th Cir. 2006)..................................................................17

Verlander v. Garner,
    348 F.3d 1359 (Fed. Cir. 2003)................................................................9

Weisgram v. Marley Co.,
    528 U.S. 440 (2000) ..................................................................................2

Winner International Royalty Corp. v. Wang,
    202 F.3d 1340 (Fed. Cir. 2000)................................................................4

**FEDERAL STATUTES**

35 U.S.C. § 102 ......................................................................... 1, 13, 18

35 U.S.C. § 103 ........................................................................ 9, 12, 13, 18

Federal Rule of Civil Procedure 50................................................................2

Federal Rule of Civil Procedure 59..............................................................15

**OTHER AUTHORITIES**

C. Douglas Thomas, Secret Prior Art–Get Your Priorities Straight!, 9
    HARV. J. L. & TECH. 147, 149-51 (1996) ...................................................13

Louis J. Beltrami, A Review of Recent Decision of the United States
    Court of Appeals for the Federal Circuit: Casenote: Kimberly-
    Clark Corp. v. Johnson & Johnson: Prior Work and Prior Art in
    Obviousness Determinations, 34 AM. U. L. REV. 779, 798 (1985) .........13

Paul W. Leuzzi, A Re-Evaluation of the Use of 35 U.S.C. 102(e),
    Secret Prior Art, in Obviousness Determinations, 29 IDEA J. L. &
    TECH. 167 (1988) ......................................................................................13

**INTRODUCTION**

Siemens files this renewed motion for judgment as a matter of law because no reasonable jury could have found that Seagate proved by clear and convincing evidence that the Asserted Claims of the '838 Patent ("the Asserted Claims") are invalid as obvious.  At trial, Seagate's obviousness defense was based on: (1) the Parkin I and II articles; and (2) the work of Heim and Parkin.  But neither reference, supports the jury's findings that the Asserted Claims are invalid as obvious.

The Parkin I and II articles do not render the claimed invention obvious because they teach away from any combination with a GMR sensor.  As a result, no reasonable jury could have found by clear and convincing evidence that there was a motivation to combine.  Even assuming a motivation to combine existed, no reasonable jury could have found by clear and convincing evidence that combining the Parkin I and II articles with a GMR sensor results in the claimed invention or teaches every limitation of the Asserted Claims.

The work of Heim and Parkin also fails to support the jury's findings on obviousness because such work is not proper prior art under 35 U.S.C. § 102(g) and cannot render the Asserted Claims obvious under 35 U.S.C. §§ 102(g)/103.[1]

Alternatively, even if this Court declines to grant Siemens' renewed motion for JMOL on Seagate's obviousness defense, this Court should grant a new trial on that defense because the jury's findings are contrary to the weight of the evidence (as reflected in this Court's own findings on inequitable conduct) and are the product of prejudicial errors in the exclusion and admission of evidence at trial.

Consequently, Siemens respectfully requests that this Court enter judgment as a matter of law that the Asserted Claims are not invalid as obvious or, alternatively, grant a motion for new trial on the validity of the Asserted Claims.

---

[1]  These arguments are more fully developed in Siemens' companion post-trial motion addressing the jury's findings on anticipation under 35 U.S.C. § 102(g). The arguments set forth in that motion are incorporated by reference herein.

DOCUMENT PREPARED
ON RECYCLED PAPER

**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Under Federal Rule of Civil Procedure 50, "[a] grant of JMOL is appropriate when 'the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 717 (Fed. Cir. 2008) (applying Ninth Circuit precedent); *see also CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1230 (Fed. Cir. 2005) (same, applying Ninth Circuit precedent). Under this standard, this Court should review the record as a whole, but must draw all reasonable inferences from the evidence in Seagate's favor and may not make credibility determinations or weigh the evidence. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). This Court, however, may consider "evidence supporting the moving party that is uncontradicted and unimpeached . . . to the extent that the evidence comes from disinterested witnesses" (*id.* at 151) and should not consider evidence that was improperly admitted (*Weisgram v. Marley Co.*, 528 U.S. 440, 453-57 (2000); *Maxwell v. Angel-Etts of Cal.*, 2001 U.S. Dist. LEXIS 25418, at *17 (C.D. Cal. July 9, 2001), *aff'd*, 2002 U.S. App. LEXIS 26528 (Fed. Cir. Dec. 13, 2002), *amended*, 2003 U.S. App. LEXIS 634 (Fed. Cir. Jan. 2, 2003) (citing *Weisgram v. Marley Co.*, 528 U.S. 440 (2000)).

**I.    NO REASONABLE JURY COULD HAVE FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE PARKIN I AND II ARTICLES RENDER THE ASSERTED CLAIMS INVALID AS OBVIOUS**

**A.    No Reasonable Jury Could Have Found By Clear and Convincing Evidence That a Person of Ordinary Skill Would Have Been Motivated to Combine the Teachings of the Parkin I and II Articles With a Basic GMR Sensor**

In determining whether Seagate proved by clear and convincing evidence that the Asserted Claims are obvious, this Court is guided by the principle that a patent is not obvious merely because each of its elements was independently known in the art. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 172 S. Ct. 1727, 1734 (2007).

Rather, a defendant asserting obviousness in view of a combination of references has the burden to show, by clear and convincing evidence, that a person of ordinary skill in the relevant field had a reason to combine the elements in the manner claimed. *See, e.g.*, *id.* at 1741-42. As shown below, no reasonable jury could have found by clear and convincing evidence that such a motivation to combine the Parkin I and II articles with a basic GMR sensor existed. Thus, Siemens is entitled to judgment as a matter of law on obviousness on this ground alone.

> 1. **No Reasonable Jury Could Have Found That the Parkin I and II Articles Are Clear and Convincing Evidence That the Asserted Claims Are Invalid as Obvious Because They Teach Away From a Combination with a Basic GMR Sensor**

At trial, Dr. Wang testified that the Parkin I and II articles created the requisite motivation to combine for obviousness purposes. It is well-established, however, that prior art references that teach away from a potentially invalidating combination ***cannot*** be used to establish a *prima facie* case of obviousness. *See, e.g.*, *Tec Air, Inc. v. Denso Mfg Mich. Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) ("There is no suggestion to combine, however, if a reference teaches away from its combination with another source."). So it is as to the Parkin I and II articles.

> a. **The '838 Patent Requires Stability in the Presence of a Magnetic Field**

The improved sensor that Dr. van den Berg invented includes a "bias layer having a magnetization in the plane of said bias layer, said magnetization being at least approximately constant in the measuring range of the magnetic field" and "a magnetic layer which is coupled antiferromagnetically to the bias layer through a coupling layer." (Tr. Ex. 1-11 ('838 Patent, Claim 1)). Based on the claim language and the testimony of both parties' experts at trial, the "bias layer" and "magnetic layer" must be fixed opposite to one another and fixed in space. (Glashow, 11/19/08, Vol. I, 69:9-13; Wang, 12/5/08, Vol. II, 54:3-15, 57:16-58:15). Without this stability, the improved sensor would not operate as a GMR spin valve,

1    which requires stability in the bias layer.  (Glashow, 11/18/08, Vol. I, 67:18-68:7).

2              **b.**    **The Structures Disclosed in the Parkin I and Parkin II**
3                        **Articles Are Not Stable in the Presence of a Magnetic**
                         **Field**

4          The Parkin I and II articles teach away from any combination with a GMR

5    sensor, because, as both parties' experts testified at trial, each of the magnetic

6    layers in the sandwich structure referenced by Parkin I and illustrated by Parkin II

7    rotate in the presence of a magnetic field.  (Wang, 12/05/08, Vol. II, 62:3-65:8; van

8    den Berg, 11/19/08, Vol. I, 88:22-89:2; Glashow, 11/19/08, Vol. I, 100:24-103:24).

9    Furthermore, as illustrated by Figure 2 of Parkin II, the magnetization of layer FI

10   rotates when a magnetic field is applied to the disclosed sandwich structure, and the

11   FII and cobalt layers in the structure rotate in the presence of an applied magnetic

12   field.  (Tr. Ex. 108-2 (Parkin II, Fig. 2)).  As a result, far from being "approximately

13   constant" as the Asserted Claims expressly require, the magnetizations of the

14   magnetic layers in the structures disclosed by the Parkin I and II articles freely

15   rotate in applied fields.  (*Id.*).

16         The '838 Patent, however, indisputably requires stability in the presence of a

17   magnetic field.  Thus, the Parkin I and II articles teach away from any combination

18   with a GMR sensor because the resulting combination would not produce the

19   stability required by the claimed sensor.  *See, e.g.*, *Winner Int'l Royalty Corp. v.*

20   *Wang*, 202 F.3d 1340, 1350 (Fed. Cir. 2000) (prior art reference teaches away from

21   claimed invention when it "suggests that the line of development flowing from the

22   reference's disclosure is unlikely to be productive of the result sought by the

23   applicant").  Based on these undisputed facts, no reasonable jury could have found

24   by clear and convincing evidence that there would have been a motivation to

25   combine the Parkin I and II articles with a GMR sensor.

26

27

28

1

2

### 2. Seagate's Sole Evidence of an Alleged Motivation to Combine – Dr. Wang's Testimony – Is Not Competent or Substantial Evidence of Such Motivation

3   At trial, Seagate relied exclusively on Dr. Wang's testimony to support a

4   motivation to combine the Parkin I and II articles with a GMR sensor.  Seagate's

5   reliance is misplaced.  Despite the undisputed instability of the structure disclosed

6   by the Parkin I and II articles (Wang, 12/05/08, Vol. II, 62:3-65:8; van den Berg,

7   11/19/08, Vol. I, 88:22-89:2; Glashow, 11/19/08, Vol. I, 100:24-103:24), Dr. Wang

8   conclusorily testified that a person of ordinary skill nevertheless would have been

9   motivated by "design incentives" to combine the teachings of the Parkin I and II

10  articles with a basic GMR sensor.  (Wang, 12/05/08, Vol. II, 27:7-15).  But Dr.

11  Wang offers nothing more than his mere *ipse dixit* on that point, and, as shown

12  above, the record overwhelmingly contradicts Dr. Wang's testimony that a person

13  of ordinary skill would be so motivated.[2]   Thus, Dr. Wang's testimony is neither

14  competent nor substantial evidence of a motivation to combine the Parkin I and II

15  articles with a GMR sensor, and Siemens is entitled to judgment as a matter of law

16  on obviousness on this ground alone.  *See, e.g.*, *Brooke Group Ltd. v. Brown &*

17  *Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (granting JMOL despite

18  controverting testimony by respondent's expert / "When an expert opinion is not

19  supported by sufficient facts to validate it in the eyes of the law, or when

20  indisputable record facts contradict or otherwise render the opinion unreasonable, it

21  cannot support a jury's verdict"); *Lucent Techs. Inc. v. Gateway, Inc.*, 509 F. Supp.

22

23

24

_____

[2]   Dr. Wang's unsubstantiated conclusions that a person of ordinary skill would have been motivated to modify a basic GMR sensor based on Parkin I and II are further directly contradicted by the following undisputed facts:

25       (1)   Parkin I and II were basic science articles rather than technical papers describing a sensor.  (Roche Dep., 7/18/08, 58:7-13); and

26

27       (2)   The structure disclosed in Parkin II was designed to allow Parkin to verify RKKY coupling and does not describe anything about sensors.  (Glashow, 11/18/08, Vol. I, 99:19-100:17).

28

2d 912, 921-22 (S.D. Cal. 2007) (granting JMOL despite controverting testimony by respondent's expert) (citing *Brooke Group Ltd.*).

> **B.     Even Assuming a Motivation to Combine the Parkin I and II Articles With a Basic GMR Sensor Existed, No Reasonable Jury Could Have Found By Clear and Convincing Evidence That Such Combination Results in the Claimed Invention**

Even if Seagate somehow could be found to have satisfied the motivation requirement, Siemens is still entitled to judgment as a matter of law on obviousness on the additional, independent ground that a reasonable jury could not have found by clear and convincing evidence that combining the Parkin I and II articles with a GMR sensor results in the claimed invention.  At trial, Dr. Wang testified that combining the Parkin I and II articles with a basic GMR sensor would result in the claimed invention.  However, Dr. Wang's opinion is based on a gross misreading of the term "pinning" in the Parkin I article and improperly ignores limitations of the Asserted Claims.  Thus, Dr. Wang's testimony is neither competent nor substantial evidence that combining the Parkin I and II articles with a GMR sensor results in the claimed invention.  *See, e.g.*, *Brooke Group Ltd.*, 509 U.S. at 242; *Lucent Techs. Inc.*, 509 F. Supp. 2d at 921-22.

> **1.     Dr. Wang's Opinion Is Based on a Gross Misreading of the Term "Pinning" in the Parkin I Article**

At trial, Dr. Wang testified that it would have been obvious to use Parkin I's suggestions to replace the antiferromagnet layer of a basic GMR sensor with Parkin I's suggestions to come up with the magnetoresistive sensor of Claim 1 of the '838 Patent.  (Wang, 12/5/08, Vol. II, 31:25-34:1).  Dr. Wang, however, based his testimony on a single sentence in Parkin I that states "[o]ne of the magnetic layers in the sandwich is ***pinned***, either by direct exchange coupling to an antiferromagnet . . . or by indirect exchange coupling through an ultrathin Ru layer to an additional magnetic layer."  (*Id.* (emphasis added)).  Dr. Wang's testimony concerning this sentence is not probative because it improperly assumes a definition of the word

DOCUMENT PREPARED ON RECYCLED PAPER

"pinned" – a term not used in the '838 Patent – to offer alternatives of fixing magnetizations ***in space*** that neither the article nor the record supports. (Wang, 12/05/08, Vol. II, 25:11-15, 25:20-26:4, 31:25-34:1).

Additionally, Dr. Wang's testimony is not probative because it improperly takes the above sentence from Parkin I out of context. (Glashow, 12/18/08, Vol. I, 95:22-96:1). The sentence that Dr. Wang relies on arises in the context of a discussion of the experiment to measure ***ferromagnetic coupling***, not antiferromagnetic coupling:

> From such magnetization loops it is not possible to measure ferromagnetic coupling nor to distinguish ferromagnetic coupling from the absence of any coupling. However, we have recently shown that the coupling does change sign, oscillating from antiferromagnetic to ferromagnetic, by using specially engineered sandwich structures. ***One of the magnetic layers in the sandwich is pinned, either by direct exchange coupling to an antiferromagnet . . . or by indirect exchange coupling through an ultrathin Ru layer to an additional magnetic layer.[22]***

(Tr. Ex. 107-3 (Parkin I) (emphasis added)). The specially-engineered sandwich structure referred to in the cited portion of Parkin I is disclosed by Parkin II, which describes an experiment for measuring ferromagnetic exchange coupling and verifying the Ruderman-Kittel-Kasuya-Yosida theory. (Glashow, 11/18/08, Vol. I, 87:10-88:11, 99:19-100:11; Wang, 12/05/08, Vol. II, 41:2-20, 65:10-14). There is no suggestion either as disclosed in Parkin I and II or as generally known in December 21, 1992, that the term "pinned" means fixing a bias layer by indirect exchange coupling to another magnetic layer as an alternative to direct exchange coupling through an antiferromagnet. And Dr. Wang offered no documentary evidence of a definition of "pinning" as described in Parkin I/II that would encompass the magnetic stability required of the claimed magnetoresistive sensor.

Moreover, "pinning" as described in the Parkin I and II articles is not the type of "pinning" that would be involved in the Asserted Claims or the type of "pinning" that would motivate a person of ordinary skill to combine the Parkin I/II

teachings with GMR sensor art in December 1992.   There are two types of magnetic pinning – "type one" and "type two."   Type one pinning involves fixing the orientation of a magnetic layer with respect to another magnetic layer, but not in space.   (van den Berg, 11/20/08, Vol. I, 88:23-90:7).   Type two pinning involves fixing the orientation of a magnetic layer in space.   (*Id.*).   There is no dispute that the Parkin I and II articles do not disclose "type two" pinning.

The magnetic layers in the structure referenced by Parkin I and illustrated by Parkin II – although coupled antiparallel in smaller magnetic fields – are not fixed in space and rotate in the presence of an applied magnetic field.   (Wang, 12/5/08, Vol. II, 61:11-65:14; van den Berg, 11/19/08, Vol. I, 88:22-89:2).   But even at field strengths where the layers are coupled antiferromagnetically, the three layer structure "spins like a top."   (Glashow, 11/18/08, Vol. I, 104:5-20).   Specifically, as shown in Fig. 2 of Parkin II, the magnetizations of the FI layer and the Co layer are antiparallel in smaller magnetic fields, but the magnetization of neither layer remains constant, or approximately constant, with respect to space.   (*Id.*).   Thus, at best, Parkin I and II disclose only type one pinning because even where the magnetic layers are coupled antiparallel, they are not fixed with respect to space.

At trial, Dr. Wang agreed that the bias layer of the claimed invention is fixed in space.   (Wang, 12/5/08, Vol. II, 54:5-15).   The claims therefore require a stability achieved through the so-called "type two" pinning that fixes a magnetic layer in space.   (van den Berg, 11/20/08, Vol. I, 89:17-90:7).   The "pinning" disclosed by the Parkin I and II articles is unsuitable for fixing in space the bias layer in a GMR sensor.   All of the magnetic layers in Parkin's specially engineered sandwich structure rotate in the presence of an applied magnetic field.   (van den Berg, 11/19/08, Vol. I, 87:15-89:22; van den Berg, 11/20/08, Vol. I, 88:11-91:21; Wang, 62:3-65:8).

Dr. Wang's analysis of the Parkin I and II articles and his unsupported, litigation-driven definition of the term "pinning" (as the term is used in those articles) indisputably ignores the magnetic instability of Parkin's structures.  Dr. Wang's opinion testimony cannot be squared with the requirements for the claimed invention, and acceptance of his opinion would necessitate a rejection of the working principles of the claimed invention.  No expert is permitted to contradict undisputed record facts in this fashion.  *See, e.g.*, *Brooke Group Ltd.*, 509 U.S. at 242; *Lucent Techs. Inc.*, 509 F. Supp. 2d at 921-22.  Thus, Dr. Wang's testimony cannot support the jury's verdict on obviousness, and judgment as a matter of law on obviousness is warranted on this additional, independent ground as well.

### 2.    Dr. Wang's Opinion Improperly Ignores Limitations of the Asserted Claims

In determining whether a patent is invalid, the analysis must begin with the question "***what*** is the invention ***claimed***?"  *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1567 (Fed. Cir. 1987) (emphasis in original).  The determination of the scope of the claimed invention requires consideration of all words in the claims.  *See, e.g.*, *In re Geerdes*, 491 F.2d 1260, 1262-63 (CCPA 1974).  It also is black-letter law that to establish that a patent claim is invalid as obvious, the challenging party must prove by clear and convincing evidence that the proposed combination of prior art references teaches or suggests *every* limitation of the challenged claims.  *See, e.g.*, *Verlander v. Garner*, 348 F.3d 1359, 1363 (Fed. Cir. 2003).  However, Dr. Wang's analysis of the Parkin I and II articles under 35 U.S.C. § 103 improperly ignores an express limitation in the Asserted Claims – a "bias layer" having a magnetization that is "at least approximately constant in the measuring range of the magnetic field" (the "a4" limitation).  (Tr. Ex. 1-11 ('838 Patent, Claim 1)).  Consequently, no reasonable jury could have found by clear and convincing evidence that the combination of the Parkin I and II articles with a basic GMR sensor teaches every limitation of the Asserted Claims.

At trial, Dr. Wang testified that the AAF claimed by the '838 Patent includes a magnetic layer, coupling layer, and bias layer. (Wang, 12/05/08, Vol. II, 55:15-18). Dr. Wang also testified that the bias layer in this AAF claimed by the "a4" claim limitation must remain constant in the presence of a magnetic field. (Wang, 12/05/08, Vol. II, 58:5-8). Dr. Wang further admitted that each of the magnetic layers – the FI layer, the FII layer, and the cobalt layer – rotate in the presence of magnetic fields. (Wang, 12/05/08, Vol. II, 61:11-65:14).

Despite admitting the AAF claimed by the "a4" claim limitation includes a "bias layer" that remains "approximately constant," Dr. Wang ignored that limitation and applied what he called a "simple definition" of an AAF to the prior art. (Wang, 12/05/08, Vol. II, 52:17). But the structures disclosed in the Parkin I and II articles do not include the "a4" limitation nor could they be combined with other art to form that limitation as there is no magnetic stability in those structures. Thus, Dr. Wang's analysis is fatally flawed as the combination of references presented at trial concerning the Parkin I and II articles could not meet the "a4" limitation because all the magnetizations in the layers of the Parkin structure layers "spin like a top" and are not "approximately constant in the measuring range." (Tr. Ex. 337-2 (Parkin II, Fig. 2); Wang, 12/05/08, Vol. II, 62:3-65:8; van den Berg, 11/19/08, Vol. I, 88:22-89:2; Glashow, 11/19/08, Vol. I, 88:22-89:2).

In sum, no reasonable jury could have found that Dr. Wang's testimony constitutes clear and convincing evidence that all of the limitations of the Asserted Claims were met by the Parkin I and II combinations presented at trial. Thus, Siemens is entitled judgment as a matter of law that the Asserted Claims are not invalid as obvious based on the Parkin I and II articles for this reason as well.

**C.  The Court's Findings on Inequitable Conduct Confirm That the Parkin I and II Articles Do Not Render the Asserted Claims Invalid as Obvious**

The propriety of Siemens' contention that no reasonable jury could find by

clear and convincing evidence that the Asserted Claims are invalid as obvious is confirmed by this Court's own findings of fact rejecting Seagate's inequitable conduct defense. (1/08/09 FOF/COL re Inequitable Conduct, 3:1-2, 3:7-9, 5:17-18, 8:19-24). First, this Court noted that the Parkin I and II articles discussed "rotating layers rather than an approximately fixed layer (the bias layer), a feature at the heart of the '838 invention." (*id.* at 3:7-12). Second, this Court found that the articles focused on coupling rather than decoupling. (*Id.*). As such, this Court's findings are consistent with the evidence presented by Drs. van den Berg and Glashow that a person of ordinary skill in the art would not combine the Parkin I and II articles and GMR sensors. (*Id.* at 8:19-24); (Glashow, 11/18/08, Vol. I, 101:23-25).

More specifically, this Court found that Parkin II did not disclose GMR sensors and that "sensors" were not mentioned. (1/8/09 FOF/COL re Inequitable Conduct, ¶ 10). This Court also expressly found that the Parkin I and II articles teach away from the claimed invention because they disclose rotating layers. (*Id.* at ¶ 20). Considering that one of the problems Dr. van den Berg desired to solve involved the stability of the bias layer (*Id.* at ¶ 21), any alleged motivation to apply the teachings of the Parkin I and II articles to the known GMR sensor art would have been an exercise in futility as it would not accomplish the stability that is at the heart of the claimed invention.

Indeed, this Court found that there are significant differences between the '838 Patent and the Parkin I and II articles:

(1)  The layers in the Parkin II article are structurally different from the '838 Patent sensor because the layers in Parkin II do not include a decoupled magnetic layer. (*Id.* at ¶ 30).

(2)  The Parkin II article was directed to a scientific experiment and does not teach anything relating to sensors or GMR. (*Id.*).

(3)  The Parkin II layers rotate and teach away from the claimed van den Berg invention requiring a rigid bias layer. (*Id.*).

Accordingly, (1) assessing these differences and (2) evaluating whether the alleged

combination would accomplish results that are not in line with the objectives of the claimed structure yield the inescapable conclusion that the Asserted Claims are not obvious in light of Parkin I and II.  *See KSR Int'l Co.*, 127 S. Ct. at 1739-41 (stating that what matters in inquiry is objective reach of patentee  / stating that court should look to interrelated teachings of art and demands in design community to determine whether there was an apparent reason to combine the elements in a way that meet the claimed limitations).  This Court's findings of fact concerning inequitable conduct merely confirm what the governing law and the record in this case unequivocally establish as a matter of law – that a person of skill in the art would not combine Parkin I and II with any basic GMR sensor art.

## II. NO REASONABLE JURY COULD HAVE FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE WORK OF HEIM AND PARKIN RENDERS THE ASSERTED CLAIMS INVALID AS OBVIOUS

### A. The Work of Heim and Park Is Not Proper Prior Art

The only other prior art upon which the jury could have based its finding that the Asserted Claims are invalid as obvious is the work of Heim and Parkin.  No reasonable jury, however, could have found by clear and convincing evidence that the Asserted Claims are invalid as obvious based on the work of Heim and Parkin because such work is not proper prior art under Section 102(g) or 103.  *E.I. Du Pont De Nemours v. Phillips Petroleum Co.*, 849 F.2d 1430, 1437 (Fed. Cir. 1988) (explaining, with reference to *In re Bass*, 474 F.2d 1276 (C.C.P.A.), that only prior art that has not been abandoned, suppressed, or concealed can be used under Section 103).  To avoid unnecessarily duplicative briefing, Siemens expressly incorporates by reference herein the arguments and authorities on that issue set forth in its contemporaneously-filed Renewed Motion for JMOL and Motion for New Trial on Anticipation Under 35 U.S.C. § 102(g).

1

2

**B.     Regardless of Whether the Work of Heim and Parkin Was Abandoned, Suppressed, or Concealed, It Still Should Not Have Been Available as Prior Art Under Section 103**

3      Secret prior art under Section 102(g)(2) – such as the work of Heim and

4   Parkin – should have been excluded from the realm of prior art that could have been

5   considered by the jury in evaluating obviousness defense based on that work under

6   Sections 102(g)/103.  The Federal Circuit, however, came to the opposite – and

7   incorrect – conclusion.  *See E.I. Du Pont De Nemours*, 849 F.2d at 1436-37;

8   *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1460 (Fed. Cir.

9   1984).  Using Section 102(g) prior art in a Section 103 obviousness determination

10  distorts the most basic principles underlying patent law, including the importance of

11  publicly disclosing inventions.   The Federal Circuit recognized the problem of

12  using secret prior art: "[T]he use of such secret art – as § 103 'prior art' – except as

13  required by § 102(e), is not favored for reasons of public policy." *Kimberly-Clark*

14  *Corp.*, 745 F.2d at 1446; *see also E. I. Du Pont de Nemours*, 849 F.2d at 1437

15  ("Certainly the court in *Kimberly-Clark* was concerned about 'secret prior art.'").

16      Courts should move away from this interpretation of the interplay between

17  Sections 102(g) and 103 to avoid the unfair effect of holding the patentee

18  responsible for knowing things that are in fact unknowable and to align the U.S.

19  patent system with most foreign patent systems, which sensibly exclude the

20  contents of unpublished patent applications from the prior art considered in

21  determinations of inventive step (the foreign analog to obviousness).   *See* C.

22  Douglas Thomas, *Secret Prior Art–Get Your Priorities Straight!*, 9 HARV. J. L. &

23  TECH. 147, 149-51 (1996); *see also* Louis J. Beltrami, *A Review of Recent Decision*

24  *of the United States Court of Appeals for the Federal Circuit: Casenote:* Kimberly-

25  Clark Corp. v. Johnson & Johnson*: Prior Work and Prior Art in Obviousness*

26  *Determinations*, 34 AM. U. L. REV. 779, 798 (1985) ("Courts . . . should interpret

27  *Kimberly-Clark* narrowly, and they should continue to hold that prior work may

28

1   only be used in an obviousness determination when the inventor has applied for and

2   has received a patent."). As a commentator highlighted, "[a]lthough the imaginary

3   person skilled in the art at the time the invention was made may be omniscient and

4   know all, how can he know that which is secret?" Paul W. Leuzzi, *A Re-Evaluation*

5   *of the Use of 35 U.S.C. 102(e), Secret Prior Art, in Obviousness* Determinations, 29

6   IDEA J. L. & TECH. 167 (1988). A shift away from *Kimberly-Clark* would

7   promote fairness, predictability, and harmonization.

8   **CONDITIONAL MOTION FOR NEW TRIAL**

9   If this Court concludes that Siemens is not entitled to judgment as a matter of

10   law that the Asserted Claims are not invalid as obvious, Siemens, in the alternative,

11   moves for a new trial on that defense on the ground that the jury's verdict on

12   obviousness is contrary to the weight of the evidence and is the product of

13   prejudicial error in the exclusion and admission of evidence.

14   **I.   A NEW TRIAL SHOULD BE GRANTED BECAUSE THE JURY'S**
**OBVIOUSNESS VERDICT IS CONTRARY TO THE WEIGHT OF**
15   **THE EVIDENCE**

16   A district court may grant a new trial under Federal Rule of Civil Procedure

17   59 if the verdict is contrary to the clear weight of the evidence. *See, e.g.*, *Molski v.*

18   *M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The existence of substantial

19   evidence in support of a verdict does not prevent the district court from granting a

20   new trial if the verdict is against the clear weight of the evidence. *See, e.g.*, *Landes*

21   *Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). In

22   determining whether to grant a new trial, it is important to note that the district

23   court can weigh the evidence, can assess the credibility of witnesses, and need not

24   view the evidence from the perspective most favorable to the moving party. *Id.*

25   Based on the arguments and authorities set forth above in its Renewed

26   Motion for Judgment as a Matter of Law (and expressly incorporated by reference

27   herein), Siemens – at a minimum – is entitled to a new trial because the jury's

28

findings on obviousness as to both the Parkin I and II articles as well as the work of Heim and Parkin are contrary to the clear weight of the evidence presented at trial. Furthermore, as to Seagate's reliance on Dr. Wang's testimony to establish its obviousness defense, Dr. Wang's testimony not only is not competent evidence but most certainly does not supply the clear and convincing evidence that Seagate needed to prove that the Asserted Claims are invalid as obvious.

The most telling indication of where the weight of evidence lies comes from this Court's own analysis.  As noted above, this Court – in conducting its own assessment of the Parkin I and II articles and issuing its own express findings regarding the relevance of those articles in rejecting Seagate's inequitable conduct defense – implicitly found that the Parkin I and II articles cannot support the jury's obviousness verdict because they teach away from the claimed invention.  (1/8/09 FOF/COL re Inequitable Conduct, 3:1-2, 3:7-9, 5:17-18, 8:19-24).

## II.   A NEW TRIAL SHOULD BE GRANTED BECAUSE THE JURY'S OBVIOUSNESS VERDICT IS THE PRODUCT OF PREJUDICIAL ERROR ON THE EXCLUSION AND ADMISSION OF EVIDENCE

A district court also may grant a new trial under Federal Rule of Civil Procedure 59 if the district court abused it discretion in admitting or excluding evidence and the admission or exclusion of such evidence prejudices a party's right to a fair trial.  *See, e.g.*, *Dorn v. Burlington N. Santa Fe R.R.*, 397 F.3d 1183, 1189 (9th Cir. 2005); *Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001) (applying Ninth Circuit precedent).  Prejudice exists if "more probably than not, the lower court's error tainted the verdict."  *McEuin v. Crown Equip.*, 328 F.3d 1028, 1032 (9th Cir. 2003).  As shown below, a new trial should be granted on Seagate's invalidity defenses on the additional, independent ground that the exclusion of Dr. Parkin's testimony on obviousness and the admission of evidence regarding the work of Heim and Parkin constituted prejudicial error.

### A.   The Exclusion of Dr. Parkin's Testimony on Obviousness Was Erroneous and Prejudicial

In this case, this Court abused its discretion in excluding Dr. Parkin's testimony that the Parkin I and II articles (which he authored) did not render obvious the structure described in the "IBM Invention Disclosure" (Tr. Ex. 500), and the exclusion of such testimony more probably than not tainted the jury's verdict.   Dr. Parkin's testimony highlights the tenuous interplay between Dr. Parkin's own articles and the structures described in the IBM Invention Disclosure. Because it is undisputed that Dr. Parkin submitted the Parkin I and II articles to the PTO during the prosecution of his patent ("the '185 Patent"), and because this Court has found that his patent issued without any claims that his articles rendered his own invention obvious, Dr. Parkin's personal view of whether his articles render obvious his patent are not only highly relevant but also precisely the type of testimony that an inventor should be allowed to give concerning his own patent. (1/8/09 FOF/COL re Inequitable Conduct, 3:19-23).

Specifically, Dr. Parkin testified at deposition as follows:

A:   Well, as an inventor I believe that the disclosure—the information we disclosed in this [(Tr. Ex. 500)] disclosure represents an invention.

Q:   Okay.

Q:   What is your understanding of an invention?

A:   What is not in the prior art, and it has some utility.

Q:   And you would agree that [Tr. Ex. 337] was part of the prior art in August of 1992?

* * *

A:   So I would agree that the—the [Tr. Ex. 337] was published prior to the filing of this invention disclosure.

Q:   So it was publicly available?

A:   It was publicly available.

Q:   Are—are you familiar with the term "obviousness" as it applies to patents?

DOCUMENT PREPARED ON RECYCLED PAPER

A:     I am, yes.

Q:     Did you consider the invention of [Tr. Ex. 500] to be obvious in view of [Tr. Ex. 337], the publication?

* * *

A:     No.

Q:     What was your answer, I'm sorry?

A:     I believe that the disclosure [Tr. Ex. 500] represented some— had some novelty—

Q:     Okay. How—

A:     —which is not obvious to somebody skilled in the art.

Q:     Could you just say that last answer again?  I'm Sorry.

A:     Yeah, I said, which is not obvious to someone skilled in the art.

(Parkin Dep., 5/1/08, 172:6-173:20).

In sum, Dr. Parkin, the author of the two articles that formed the core of Seagate's obviousness defense, testified that based on his personal knowledge and understanding of his own articles, they did not render the structure described in Trial Exhibit 500 obvious.  Yet, it was this very layer system that Seagate argued (and the jury apparently found) was materially similar to the layer system claimed in the '838 Patent and that Seagate argued was rendered obvious by Parkin I and II. Thus, it is beyond cavil that the exclusion of such relevant and compelling evidence on obviousness improperly tainted the jury's verdict on that issue.

The Court excluded this pivotal testimony by Dr. Parkin based on Seagate's objection that it constituted a "legal conclusion."  (12/3/08, Vol. I, 63:1-67:17).  It is no such thing.  As the Sixth Circuit noted in *United States v. Ahmed*, 472 F.3d 427, 434 (6th Cir. 2006), "it is often difficult to determine whether a legal conclusion is implicated" in testimony especially where terms are used that "have a separate, distinct and specialized meaning in the law different from that present in the vernacular. . . ."  While Dr. Parkin did use the term "obvious," he was clearly

testifying as to his own personal knowledge concerning his invention and whether it contained "some novelty" outside of the articles he authored.   Dr. Parkin's testimony was based on his own knowledge of articles he authored and work he was engaged in and, thus, was *factual* in nature.   Additionally, Dr. Parkin's testimony did not go to an "ultimate issue" in the case – namely, whether the '838 Patent was obvious.  Thus, Dr. Parkin's testimony should not have been excluded.

Given its importance in the case and the fact that any possible misinterpretation of Dr. Parkin's testimony by the jury could have been cured with an additional instruction, this Court should have erred on the side of *admitting* the testimony.   Seagate, not surprisingly, exploited the exclusion of Dr. Parkin's testimony for all it was worth, vigorously arguing to the jury that Dr. Parkin's two articles rendered the Asserted Claims obvious, all the while knowing that Dr. Parkin himself disagreed.  The jurors should have been allowed to consider this fact in their deliberations and had they been allowed to do so, their verdict on obviousness likely would have been different.  Thus, Siemens is entitled to a new trial so it may present Dr. Parkin's testimony for the jury's consideration.

**B.    The Admission of Evidence Regarding the Work of Heim and Parkin Was Erroneous and Prejudicial**

Regarding the admission of evidence at trial, the jury's obviousness verdict was clearly tainted by the erroneous introduction of evidence related to the work of Heim and Parkin.  If this Court concludes that such work does not constitute proper prior art for purposes of Siemens' invalidity defenses under 35 U.S.C. § 102(g) and 35 U.S.C. §§ 102(g)/103(a), Siemens is entitled to a new trial on obviousness even if this Court rules that the Parkin I and II articles rendered the Asserted Claims obvious.  The work of Heim and Parkin played a central role at trial and was the prior art upon which Seagate's invalidity defense at trial primarily was based. Siemens' response to Seagate's obviousness defense undoubtedly would have played differently for the jury if the evidence relating to such work had been

excluded.  Siemens, at the very least, should get a retrial free of that story.  With the focus on the Parkin I and II articles alone, the result likely will be different as well for the reasons set forth in this motion.  *See, e.g.*, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court'").

## CONCLUSION

For the reasons set forth above, Siemens respectfully requests that this Court grant Siemens' Renewed Motion for Judgment as a Matter of Law and enter judgment that the Asserted Claims are not obvious under 35 U.S.C. § 103(a) based on: (1) the combination of the Parkin I or Parkin II articles with a basic GMR sensor; and/or (2) the work of Heim and Parkin.  Alternatively, Siemens respectfully requests that this Court grant Siemens' Motion for New Trial and grant a new trial on Seagate's obviousness defense.  Siemens further respectfully requests that this Court grant Siemens any and all other relief to which it is justly entitled.

DATED:  February 18, 2009

JOHN A. O'MALLEY
BRANDON C. FERNALD
**FULBRIGHT & JAWORSKI L.L.P.**




By: _____*/s Brandon C. Fernald*_____
Brandon C. Fernald
ATTORNEYS FOR PLAINTIFF
SIEMENS AG

DOCUMENT PREPARED
ON RECYCLED PAPER